IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NOVUS FRANCHISING, INC.,

                              Plaintiff,                       OPINION AND ORDER

    v.

                                                                       12-cv-204-wmc

SUPERIOR ENTRANCE SYSTEMS, INC.,
SUPERIOR GLASS, INC., and KNUTE
PEDERSEN,

                              Defendants.

---

      Shorty after the court issued its decision on summary judgment in this case, the parties entered into a conditional settlement agreement, stipulating to the remaining unresolved questions of fact and obviating the need for a bench trial. The only issue remaining for disposition on the merits is the equitable relief plaintiff seeks under the Franchise Agreement's post-term covenant not to compete. Following additional briefing by the parties, the court now addresses the scope and proper implementation of that covenant, which the court previously construed and upheld as reasonable on summary judgment.

      Defendant Superior Enterprise Systems has consistently been in compliance with the covenant's two-year prohibition on competition, which began on February 29, 2012 (the date the Franchise Agreement terminated). Defendant Knute Pedersen, on the other hand, has not been and is not in compliance. To be in compliance he must (1) completely divest all financial interest in and connection with Superior Glass, Inc.; or (2)

arrange for Superior Glass to cease performing auto glass repair.  Once in compliance, the clock will start ticking on Pedersen's two-year non-competition period.

OPINION

I.      Scope of the Covenant Not to Compete

The parties disagree over the proper interpretation of the court's summary judgment opinion, which held that Franchise Agreement's post-term covenant not to compete is enforceable with blue-penciled modifications.  (Dkt. #105, at p 26.)   The original covenant not to compete is found at § 22.3 of the Franchise Agreement and reads as follows:

> 22.3 Post-Term Covenant Not-to-Compete
>
> You agree that you, your Owners, [and] the Personal Guarantors, and the members of your and their Immediate Families will not, for a period of two years after the termination or expiration of this Agreement, for your or their own account or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company, or corporation (a) seek to employ any person who is at that time employed by us or by any Novus® Franchisees without the prior consent of their employer, (b) own, operate, lease, franchise, conduct, engage in, consult with, be connected with, have any interest in, or assist any person or entity engaged in any or other business that is in any way competitive with or similar to the Business System or your Business which is located within (i) your APR, (ii) any area of primary responsibility we grant to any other Novus® franchise or business, or (iii) within ten miles of any business location of any Novus® franchise or business in the United States and its possessions. You, your Owners, and the Personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect us and our Franchisee if this Agreement expires or is terminated by either party for

> any reason, and that this covenant not to compete is necessary to permit us the opportunity to resell and/or develop a new Novus® business within your APR. You also agree that if you, your Owners, [or] the Personal Guarantors, or the members of your or their Immediate Families violate this covenant not to compete, the term of the non-compete will be extended for any person engaged in violating this covenant not to compete, until two years after the violation has ceased.

(Dkt. #1, ex. 1, § 22.3.)

After analyzing this covenant under Minnesota law and exercising a "blue pencil," the court held

> with respect to the reasonableness of the time and geographic restrictions imposed, the covenant is so far reaching that it prohibits a guarantor's relatives from being "connected with" or having "any interest in" a business in any way competitive with or similar to a Novus franchise, within ten miles of any Novus franchise anywhere in the United States, for two years. (Dkt. #1, ex. 1, § 22.3.) Needless to say, on its face this part of the covenant appears overbroad and unreasonable. But applying the so-called "blue pencil" rule, this court can choose to enforce only the reasonable portions of a covenant, *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002), and the restrictions are quite reasonable as applied in this case.

(Dkt. #105, at p 27-28.)

Plaintiff argues that the first sentence of this paragraph represents the court's description of the blue-penciling that is necessary to make the covenant enforceable and, therefore, that the only thing that must be penciled out of the covenant is reference to the guarantor's relatives and family. That is an unreasonably narrow reading and, in any event, not what the court intended. The first sentence was only as an illustration of the

extent to which the covenant over-reaches as to *whom*, *where* and *when* the covenant might apply. The court's holding can be found in the two paragraphs that follow:

> Although Pedersen may not, himself, constitute a competitive threat in the auto glass repair marketplace, the non-competition provision must apply to him if Novus is to have any sort of relief, because SGI – a non-party to the Franchise Agreement – cannot be directly restrained. SGI has been operating a Novus franchise from the same location for the past two decades. Even if SGI ceases to advertise itself under the Novus name and logo, it will still retain some residual community goodwill (and, arguably, technical expertise) as a result of its long association with Novus.
>
> Although the parties disagree about the extent to which the presence of an ex-franchisee makes it more difficult for Novus to re-franchise an area, it seems very likely that SGI's presence in the auto glass repair market will to some extent hinder Novus's efforts to refranchise in and around Superior, Wisconsin. . . .

(Dkt. #105, at p 28.)

Consistent with this quoted language, the covenant not to compete is only valid to the extent that it limits competition by Superior Glass, Inc., the *de facto* franchisee. Accordingly, the appropriate geographic limit on competition is exactly the same size and shape as the customer base serviced by Superior Glass in and around Superior, Wisconsin.[1]

---

[1] This is an atypical case because the franchisee is not a party to the Franchise Agreement and the contract guarantor has very little direct involvement with auto glass repair. In a case with more conventional facts, the court would have adhered more closely to the language of the covenant, rather than fashioning this unique relief by exercise of a blue pencil. Under the current circumstances, it seems plain that Mr. Pedersen has gained no competitive advantage whatsoever except to the extent he acts through Superior Glass and, therefore, it is only reasonable to restrict his participation within the geographical territory occupied by Superior Glass.

4

So much for the appropriate geographical scope. As for the covenant's reasonable temporal scope, there is no need to shorten the restriction provided for in the Franchise Agreement: two years from the date the Agreement terminated, or from the last violation of the covenant. Defendants argue that a two-year restriction is excessive, pointing out that "[u]nder Minnesota law, noncompete provisions in connection with the sale of a business can be enforced only to the extent necessary to protect the 'goodwill purchased.'" *Hypred S.A. v. Pochard*, No. Civ.04–2773(JNE/JGL), 2004 WL 1386149, at *3 (D. Minn. June 18, 2004) (quoting *Bess v. Bothman*, 257 N.W.2d 791, 795 (Minn. 1977)). They further argue that the goodwill attached to the Novus brand in Superior, Wisconsin, was minimal and that the name was "tarnished" when Superior Glass took over the franchise.

While this may have been a fairly persuasive argument, the time to make it was at summary judgment, when the enforceability of the covenant was at issue. As plaintiff correctly points out, in making this argument now, defendants are effectively seeking reconsideration of the court's summary judgment decision, which ruled that the non-competition provision was "quite reasonable as applied in this case." (Summary Judgment Opinion, dkt. #105, at p 27-28.) The court declines the implicit invitation to reconsider its earlier opinion based on an argument effectively waived.

As an alternative to a *shorter* prohibition on competition, defendants also suggest several possible "start dates" in the past from which the court might choose in deciding when the two-year, post-term prohibition on competition began. The defendants argue that because Superior Glass substantially ceased using the Novus trademark in

5

November, 2010, it came into substantial compliance with the covenant at that time. In the alternative, defendants offer May 25, 2012, as the date that Superior Glass advertised it was no longer a Novus franchisee pursuant to this court's preliminary injunction order. Neither of these dates is proper, however, because non-competition with Novus does not just mean disassociating from the Novus brand, it means not having any interest in an auto glass repair business *at all*. Moreover, there is simply no getting around the plain language of the Franchise Agreement: Pedersen is bound from competing "for a period of two years after *the termination* or expiration of this Agreement." (Franchise Agreement, dkt. #1, ex. 1, § 22.3 (emphasis added).) By the plain language of the Agreement then, the restrictive covenant expires two years from February 29, 2012, the date that the parties stipulate the Agreement terminated.

While the application of that start date to defendant Superior Entrance Systems is straightforward enough since it never competed in the auto glass repair market, the issue is a bit more complicated with respect to Knute Pedersen. According to the Franchise Agreement "the term of the non-compete will be extended for any person engaged in violating this covenant not to compete, until two years after the violation has ceased." (Dkt. #1, ex. 1, § 22.3.) Defendants essentially admit that Superior Glass has been performing auto glass repair from February 29, 2102, until the present. Therefore, Pedersen has been in breach of the covenant all this time (through his continued association with Superior Glass), delaying the start date of his two-year non-compete. Mr. Pedersen will only be in compliance with the covenant not to compete when either (1) he completely divests all financial interest in and connection with Superior Glass,

6

Inc.; or (2) when Superior Glass ceases to perform auto glass repair.  At that date, the countdown clock on the two-year prohibition will begin.

II.     Miscellaneous Additional Matters

At the final pretrial conference on September 6, 2012, defendants raised objections to certain findings in the summary judgment opinion unrelated to the substantive merits of the opinion.  Some of those arguments were convincing.  Accordingly, the court will issue a corrected version of the summary judgment motion with minor edits related to the time at which defendants substantially ceased use of the Novus mark, and the court's footnote #12.  Finally, because the court trial scheduled for September 10, 2012, was cancelled shortly after the final pretrial conference, the court never had a chance to rule on defendants' two motions in limine (dkt. #93).  Given the court's other rulings, those motions will now be denied as moot.

ORDER

IT IS ORDERED that:

1. Defendants' motions in limine #1 and #2 (dkt. #93) are DENIED as moot in light of the parties' conditional settlement agreement.

2. The court finds that there was no material breach of the Franchise Agreement on the part of plaintiff Novus Franchising, Inc..

3. The Franchise Agreement terminated on February 29, 2012.

4. Plaintiff Novus Franchising, Inc. is awarded damages in the amount of $12,600.00 for royalties due and owing under the Franchise Agreement, equipment lease obligations, and loss of equipment.

5. Novus Franchising, Inc. retains the right to audit defendants' business records in accordance with the terms of the Franchise Agreement for additional royalties determined to be due pursuant to the audit, and audit fees pursuant to the provisions of the Franchise Agreement. Such amounts will be deposited with the existing escrow agent in keeping with the terms of the court's Order for Preliminary Injunction (dkt. #55).

6. The above Paragraphs 2 through 5 are expressly conditional on the court's Opinion and Order, dated September 5, 2012 (dkt. #105), being upheld on appeal pursuant to the rationale set forth in *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 160 (7th Cir. 1988).

7. The post-termination covenant not to compete, set forth in Article 22.3 of the Franchise Agreement is blue penciled as follows:

    *22.3 Post-Term Covenant Not-to-Compete*
    You agree that you, your Owners, [and] the Personal Guarantors, ~~and the members of your and their Immediate Families will not~~, for a period of two years after the termination or expiration of this Agreement, for your or their own account or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company, or corporation (a) seek to employ any person who is at that time employed by us or by any Novus® Franchisees without the prior consent of their employer, (b) own, operate, lease, franchise, conduct, engage in, consult with, be connected with, have any interest in, or assist [Superior Glass, Inc. or] any person or entity [legally connected with or in effective successorship to Superior Glass, Inc.] ~~engaged in any or other business that is in any way competitive with or similar to the Business System or your Business which is located within (i) your APR, (ii) any area of primary responsibility we grant to any other Novus® franchise or business, or (iii) within ten miles of any business location of any Novus® franchise or business in the United States and its possessions.~~ You, your Owners, and the Personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect us and our Franchisee if this Agreement expires or is terminated by either party for

8

    any reason, and that this covenant not to compete is necessary to permit us the opportunity to resell and/or develop a new Novus® business within your APR. You also agree that if you, your Owners, [or] the Personal Guarantors, or the members of your or their Immediate Families violate this covenant not to compete, the term of the non-compete will be extended for any person engaged in violating this covenant not to compete, until two years after the violation has ceased.

Defendants shall abide by the terms of the post-termination covenant not to compete for a two year period commencing (a) for defendant Superior Enterprises Inc., on February 29, 2012, and (b) for defendant Knute Pedersen, on the date he comes into compliance with the covenant.

8. Plaintiff Novus Franchising, Inc. shall file its motion for attorneys' fees and costs no later than fourteen (14) days after entry of this judgment pursuant to Fed. R. Civ. P. 54. Defendants shall file any opposition to that motion no later than fourteen (14) days after plaintiff's motion is filed. In the event that a dispute arises as to the hours or hourly rate sought, counsel for both parties shall promptly exchange with each other and provide to this court a copy of the actual legal invoices issued to their client and underlying time and cost records for this matter.

Entered this 27th day of December, 2012.

                          BY THE COURT:

                          /s/
                          _____
                          WILLIAM M. CONLEY
                          District Judge