IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NOVUS FRANCHISING, INC.,

                Plaintiff,                OPINION AND ORDER

v.

                                      12-cv-204-wmc

SUPERIOR ENTRANCE SYSTEMS, INC.,
SUPERIOR GLASS, INC., and KNUTE
PEDERSEN,

                Defendants.

---

On March 19, 2013, the court ordered defendants to show cause why they should not be held in contempt for violating the court's injunction. On April 19, 2013, the court held an evidentiary hearing on the matter. After considering the parties' written submissions and the evidence presented, the court will decline to find that defendants acted in contempt of the court's order, although they have come dangerously close.

BACKGROUND

On September 5, 2012, this court upheld, with modifications, the covenant not to compete found in the Franchise Agreement between the parties. On December 28, 2012, the court clarified that the blue-penciled covenant was enforceable as follows:

> 22.3 Post-Term Covenant Not-to-Compete
>
> You agree that you, your Owners, [and] the Personal Guarantors . . . will not, for a period of two years after the termination or expiration of this Agreement, for your or their own account or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company, or corporation (a) seek to employ any person who is at that time employed by us or by

>any Novus® Franchisees without the prior consent of their employer, (b) own, operate, lease, franchise, conduct, engage in, consult with, be connected with, have any interest in, or assist [Superior Glass, Inc. or] any person or entity [legally connected with or in effective successorship to Superior Glass, Inc.] . . .

(Dkt. #120, ¶ 7.)

On January 3, 2013, the court entered final judgment, enjoining defendants "from violating the modified post-termination covenant not to compete in auto glass repair." (Dkt. #121.) On January 17, in response to defendants' motion for clarification as to when they had to come into compliance with the injunction, the court ordered Knute Pedersen to "either divest all interest and control in Superior Glass, Inc., or ensure that Superior Glass, Inc. does not perform any auto glass repair" within one month. (Dkt. #130 at 4.)

Superior Glass subsequently sold its windshield repair business to a third party, a company named "SGI Windshield Repair," which it turns out is newly-formed, owned by three Superior Glass employees (though not Pedersen), and located in the same building as Superior Glass. Moreover, Superior Glass has been actively referring its existing customers and all new requests for windshield repair to SGI Windshield Repair.

Defendants concede that the transfer of business goodwill and referrals from Superior Glass was a primary asset in the sale of its windshield repair business, and that SGI Windshield Repair would not have bought the business without both.

2

OPINION

Although defendants will not be found in contempt at this point, the court remains disturbed by Superior Glass's and Knute Pedersen's deliberate orchestrated transfer of the glass repair business to achieve only arguably technical compliance with the terms (if not the spirit) of the court's injunction, while at the same time preserving all of its value with the least impact on Superior Glass. Under the terms of the covenant not to compete, which the court's injunction required be strictly followed, Superior Entrance Systems and Knute Pedersen are not to "consult with, be connected with, have any interest in, or assist [Superior Glass, Inc. or] any person or entity [legally connected with or in effective successorship to Superior Glass, Inc.]" Plaintiff argues that defendants have violated this prohibition because Superior Glass, of which Knute Pedersen is the President, is materially assisting an entity in effective successorship to Superior Glass, Inc.'s auto glass repair business. Although it is a very close question, the court finds otherwise.

The crux of the disagreement between the parties is whether Knute Pedersen's actions as President of Superior Glass qualify as consulting with, being connected with, having any interest in, or assisting SGI Windshield Repair (SGIWR). Pedersen is not assisting SGIWR, at least not directly, and defendants' witness at the contempt hearing, James Colborn, testified that Pedersen has scrupulously avoided involvement in all dealings between Superior Glass and SGIWR. Since Superior Glass continues to assist SGIWR (most notably by referring business and by employing its shareholders) and Pedersen continues to assist Superior Glass, Pedersen is arguably indirectly assisting

3

<mark><mark>

SGIWR.  It is, as the court has said, a close question, but ultimately the court concludes that the chain of causation is too remote, and that Pedersen has not violated the terms of the covenant not to compete.

Defendants have, however, come *very* close to the line, and should have consulted in advance of its implementation with opposing counsel (and if a disagreement remained, with this court) to see if their plan would pass muster under the covenant and the court's injunction.  Defendants' obvious attempt to avoid the spirit of the injunction also smacks of bad faith.  Indeed, even the name given the new entity, SGIWR, was done to ensure that it would be seen as an entity closely-affiliated with Superior Glass, as, of course was the placement of its offices, the connections of the people who run and own both businesses, and the referral service provided by Superior Glass.  All of these actions establish SGIWR as a *de facto*, if not *de jure*, branch of Superior Glass.[1]

Still, Superior Glass, Inc. jumped through a number of legal hoops to divest itself officially of its windshield repair business, at some cost to itself.  It has also cancelled relevant promotions, advertisements and signs, and jeopardized its existing windshield replacement business by losing its replace/repair classification for insurance referrals.  These expenditures of money and time demonstrate defendants' substantial compliance with the injunction.

---

[1] Plaintiffs also presented evidence of other minor violations of the covenant not to compete by Superior Glass (and thus by Pedersen), such as representing on their website and on the telephone that they offer a "rock-chip repair" service, and maintaining "windshield repair" signage on an apparently non-functional van parked behind their building.  The court finds that these isolated infractions -- provided they are promptly repaired -- warrant only minimal contempt sanctions even in light of defendants' other aggressive actions.

Finally, plaintiff has asked for reimbursement of the attorneys' fees and costs incurred in enforcing the court's injunction and in bringing this motion for contempt. Because plaintiff has not succeeded on the merits of this motion, the court declines to award the requested fees. But in light of defendants' sharp practices, failure to get approval for its aggressive actions in advance, and remaining technical violations of the court's injunction, the court will order that defendant Superior Glass promptly pay plaintiff $1,000 and immediately remove any reference (including on any decommissioned vehicles, in telephone messages or on websites) linking Superior Glass, Inc. to windshield repair or rock-chip repair services.

## ORDER

IT IS ORDERED that:

(1) plaintiff's request for a finding of contempt is DENIED in substantial part; and DENIED in smaller part for the reasons set forth here;

(2) defendant Superior Glass is to promptly pay plaintiff $1,000 for its violations of the court's injunction; and

(3) defendants must immediately remove any reference (including on any decommissioned vehicles, in telephone messages or on websites) linking Superior Glass, Inc. to windshield repair or rock-chip repair services.

Entered this 16th day of May, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge